UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

LEANORD JACKINS,

        Plaintiff,

  -v-                                                       No. 16 CV 3510-LTS-GWG

NELSON MUTHRA and ALBERT
PAOLANO,

        Defendants.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

In this action against Nelson Muthra and Dr. Albert Paolano (collectively "Defendants"),[1] Leonard Jackins ("Plaintiff"), proceeding <u>pro se</u>, alleges that he was provided inadequate medical care while in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Am. Compl., Docket Entry No. 17.) Defendants have moved for summary judgment. (Docket Entry No. 63.) Plaintiff responded with a cross-motion for summary judgment in his favor. (Docket Entry No. 78.) Defendant then responded with a combined opposition/reply brief, and Plaintiff made no further submission. (Docket Entry No 88.) Accordingly, the Court treats both motions as fully briefed.

The Court liberally construes Plaintiff's Amended Complaint as asserting a claim under 42 U.S.C. section 1983, and thus has subject matter jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1343(a)(3). <u>See</u> <u>Bertin v. United States</u>, 478 F.3d 489, 491 (2d Cir.

---

[1] Plaintiff's claims against the other two defendants named in his Amended Complaint have been dismissed. (Docket Entry No. 43.)

2007) (stating that a court must "liberally construe pleadings and briefs submitted by pro se litigants").

The Court has considered the submissions of both parties carefully and, for the following reasons, denies Plaintiff's motion for summary judgment and grants Defendants' motion for summary judgment, dismissing this action.

BACKGROUND[2]

Plaintiff asserts claims that allegedly arose while he was a prisoner in the custody of DOCCS. (Def. 56.1 St. ¶ 4.) He has since been released to a five-year term of supervised release, which he is currently serving. (Id.) On or about June 17, 2014, Plaintiff suffered a self-inflicted gunshot wound to his forearm and was admitted to Harlem Hospital. (Id. ¶ 5.) He underwent surgery to remove the bullet and the hospital's medical staff installed a plate and several screws in his arm to hold his bone together. (Id. ¶ 6.) He was thereafter placed in the custody of the New York City Department of Correction, where his cast and staples were removed. (Id. ¶ 7.)

Plaintiff was then transferred to DOCCS custody and moved to Washington Correctional Facility. (Id. ¶ 11.) Plaintiff asserts, without citation to documentary evidence reflecting pertinent communications from Harlem Hospital with DOCCS, that DOCCS did not

---

[2] The facts recited herein are undisputed unless otherwise indicated. Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer. Citations to the Defendants' Local Civil Rule 56.1 Statement ("Def. 56.1 St."), Plaintiff's "Statement of Facts" (Docket Entry No. 75-1, ECF pg. 4-6), or Defendants' opposition to Plaintiffs Statement of Facts ("Def. 56.1 Opp'n") incorporate by reference the parties' citations to underlying evidentiary submissions. The Court declines to consider facts raised by the parties that are either immaterial or constitute conclusory statements of law that the parties proffer as facts.

follow recommendations from Harlem Hospital and failed to schedule physical therapy appointments. (Statement of Facts ¶ 5.) At Plaintiff's intake examination on December 15, 2014, the scarring from the wound and surgery was noted by a nurse and defendant Paolano, who was a physician at the facility and approved his medication list, but prescribed nothing for pain. (Def. 56.1 St. ¶ 12.) Plaintiff, generally, did not complain about his care at Washington Correctional Facility during his incarceration there because he realized he was still healing from his wound and surgery. (Id. ¶¶ 14-15.) Paolano saw and treated Plaintiff several times, but never provided any treatment for his forearm. (See id. ¶¶ 12-21.)

Plaintiff was transferred to Sing Sing Correctional Facility on April 17, 2015. (Id. ¶ 22.) While at Sing Sing, Plaintiff was under the care of defendant Muthra, who was a physician's assistant at that facility. (Id. ¶¶ 2, 26.) Muthra saw Plaintiff several times for complaints about his forearm, including for pain, for Plaintiff's belief that the screws were coming loose, and for other, unrelated, health issues.[3] (See id. ¶¶ 26-52.) On March 28, 2016, a DOCCS nurse saw Plaintiff about pain in his arm, and she provided an analgesic topical balm. (Id. ¶ 30.) Plaintiff was given appointments to see Muthra on April 4, 2016 and again on April 18, 2016, both of which he refused to attend. (Id. ¶ 31.)

Plaintiff filed two grievances, in which he complained about the quality of his medical treatment with respect to his arm, with Sing Sing's Inmate Grievance Review Committee ("IGRC") on March 27 and April 5, 2016, which were received on April 4 and April 8, 2016, respectively. (Id. ¶ 54.) Plaintiff dated his original complaint in this action April 4, 2016, and it was filed on May 10, 2016. (Compl., Docket Entry No. 2.) On April 21, 2016, the

---

[3] Plaintiff did not see Muthra for extended periods of time because Plaintiff was assigned another provider, Plaintiff failed to attend his scheduled appointments, or Plaintiff did not reach out or respond to Muthra. (Id. ¶¶ 28, 31, 38, 49.)

IGRC rendered its decision, stating on the reverse side of Form #2131 that it "disagreed" with Plaintiff's grievances and further stating that "the grievant must see his assigned provider and discuss the issue(s); this is the proper way to get treatment." (IGRC Decision, returned to inmate on April 22, 2016, Docket Entry No 70-4, at ECF pg. 4.) Form #2131 instructed Plaintiff to check one of four available boxes, by which he could, inter alia, agree or disagree with the decision and appeal it to the facility superintendent, and to return the form within seven calendar days. (Id.) Plaintiff testified at his deposition that he did not appeal the IGRC decision. (Def. 56.1 St. ¶ 58.) Plaintiff did write several letters to various government officials to raise his dissatisfaction with the level of care he received, among other issues. These included two letters to Dr. Razia Ferdous, the medical director at Sing Sing (Pl.'s Tr., Docket Entry No. 70-3, at 61:16-62:16), a letter to Governor Andrew Cuomo, dated March 24, 2016 (Docket Entry No. 75-1, at ECF pg. 16-19), a letter to Richard T. Wolf, Executive Director of the New York City Board of Correction, dated April 3, 2016 (Docket Entry No. 75-1, at ECF pg. 21), and a letter to DOCCS Commissioner Anthony Annucci, dated April 7, 2016 (Docket Entry No. 75-1, at ECF pg. 23-25).

Muthra ordered X-rays of Plaintiff's arm and chest on April 25, 2016, in response to Plaintiff's complaints of forearm pain and respiratory issues. (Def. 56.1 St. ¶ 32.) Muthra offered Plaintiff ibuprofen, which Plaintiff declined, for his discomfort. (Id. at ¶ 33.) The forearm X-rays showed no abnormalities and Muthra noted no pertinent complaints during visits in May, June, and July 2016. (Id. ¶¶ 34.) After noticing new symptoms on September 1, 2016, Muthra requested a referral to an orthopedist, which DOCCS denied because Muthra had not yet attempted more conservative treatment, such as physical therapy. (Id. ¶ 37.) On January 19, 2017, Muthra referred Plaintiff to physical therapy, which he attended from April 6, 2017 to June

15, 2017.  (Id. ¶¶ 39-43.)  On June 28, 2017, Muthra again requested a referral to an orthopedist, which was again denied, and ordered an electromyogram (EMG) and a Nerve Conduction Velocity test, which revealed no nerve damage that would cause pain or limit the use of Plaintiff's arm.  (Id. ¶¶ 45-47.)  On October 31, 2017, Muthra made a third request to refer Plaintiff to an orthopedist, Dr. Jonathan Holder, whom Plaintiff saw on January 4, 2018.  (Id. ¶¶ 50-51.)  Holder observed that Plaintiff's range of arm motion was reduced due to the gunshot wound, found no loosening of the screws, and recommended that elective surgery be performed upon Plaintiff's release from custody to remove the plate and screws.  (Id. ¶¶ 51-52.)

By letter, Plaintiff informed the Court that he was released from custody on April 19, 2018.  (Docket Entry Nos. 77, 82.)

## DISCUSSION

Under Rule 56(a), summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of demonstrating the absence of a material issue of fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986), and the court must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party."  Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F. 2d 1455, 1461 (2d Cir. 1993)) (internal quotation marks omitted).  A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).  "[M]ere conclusory allegations or denials . . . cannot by themselves

create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)). When considering cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Schwabenbauer v. Board of Educ. of City School Dist. of City of Olean, 667 F.2d 305, 314 (2d Cir. 1981).

The Second Circuit has held that "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

The Court construes Plaintiff's claim for inadequate medical care as alleging, pursuant to 42 U.S.C. section 1983 ("Section 1983"), a deprivation of his 8th Amendment rights by state officials under a theory of deliberate indifference. See Vargas v. City of New York, 13-CV-3188 (SLT), 2017 U.S. Dist. LEXIS 49634, at *23-24, 31-32 (E.D.N.Y. Mar. 31, 2017) (stating that claims for inadequate medical care of a sentenced prisoner by state or local officials should be classified as Section 1983 claims for deliberate indifference in violation of the 8th Amendment). Defendants, noting that Plaintiff never appealed the IGRC's action on his grievance, contend that Plaintiff's claim must be dismissed for failure to exhaust his administrative remedies. The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under [Section 1983] . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C.S. § 1997e(a) (LexisNexis 2009). Failure to exhaust is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212-17 (2007). The requirement of exhaustion "applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong," such as inadequate medical care. Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Macias v. Zenk, 495 F.3d 37 (2d Cir. 2007) (applying PLRA's exhaustion requirement to a claim for deliberate indifference to the plaintiff's medical needs). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit," Porter, 534 U.S. at 524, so long as the administrative process "could provide some sort of relief on the complaint stated." Booth v. Churner, 532 U.S. 731, 734 (2001). A plaintiff is required to exhaust all grievance procedures prescribed by the prison system unless they are unavailable to the plaintiff insofar as: (1) they "operate[] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "the administrative scheme [is] . . . so opaque that . . . no ordinary prisoner can navigate it"; or (3) prison officials actively interdict or interfere with prisoners availing themselves of the relevant grievance procedures. Ross v. Blake, 136 S. Ct. 1850, 1853-54 (2016) (internal quotation marks, alterations, and citations omitted).

Here, the applicable regulations clearly provide for a tiered grievance procedure. First, the aggrieved prisoner must submit his grievance to the IGRC clerk on the inmate Grievance Complaint Form (Form #2131) (or plain paper if unavailable) within 21 calendar days of the incident giving rise to the grievance. N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, § 701.5(a)(1). A prisoner must submit his grievance at the facility in which he is currently located, although it may pertain to an incident at another facility. Id. If the grievance cannot be resolved informally, the IGRC must hold a hearing within sixteen calendar days of its receipt of the grievance, after which it must render its decision, in written form, within two days of the hearing. NYCRR tit. 7, §§ 701.5(b)(1)-(3). Unless additional time is requested, a "grievant or any direct

party [who] wishes to appeal [the IGRC's decision] to the superintendent . . . must complete and sign the appeal section on the IGRC response form (form #2131) and submit it to the grievance clerk within seven calendar days after receipt of the IGRC's written response." NYCRR tit. 7, § 701.5(c)(1). If the prisoner disagrees with the facility superintendent's decision, he may then appeal it to the Central Office Review Committee. NYCRR tit. 7, § 701.5(d)(1)(i).

Plaintiff concedes that he did not appeal the IGRC's decision in the manner prescribed by regulation and the instructions contained on Form #2131. Plaintiff advances no argument and proffers no evidence that prison officials were categorically unwilling or unable to address the grievances submitted by inmates or that prison staff were actively thwarting his efforts to file a grievance. See Ross, 136 S. Ct. at 1853-54. To the extent he appears to argue that his letters to various "D[OCCS] Officials and many other watchdog agencies" constitute a constructive appeal, all letters, except perhaps those he allegedly sent to Dr. Ferdous (which were not produced), were sent before the IGRC reached its decision and thus could not logically be construed as an appeal. (Statement of Facts ¶ 10.) The letters to Dr. Ferdous, to the extent they were written after the IGRC's decision, are also insufficient as an appeal, as informal communications are not an adequate substitute for communications filed in the requisite form and submitted to the proper recipient, as set forth in the prison system's regulations. See Macias, 495 F.3d at 44 (finding that mere notice of a grievance or appeal is insufficient and that a prisoner must comply with the applicable procedures in the proper form); see also Timmons v. Schriro, No. 14-CV-6606 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) (writing an informal letter to the warden did not qualify as an appeal).

Nor is there any indication that the appeal procedures were opaque or confusing. To the contrary, the process to appeal the IGRC's decision, as explained by regulations and the

instructions on Form #2131, is abundantly clear.  Cf. Muniz v. Goord, 04-CV-049 (TJM/GHL), 2008 U.S. Dist. LEXIS 112039, at *31-32 (N.D.N.Y. June 30, 2008), report & recommendation adopted, 04-CV-0479 (TJM/GHL), 2008 U.S. Dist. Lexis 73700 (N.D.N.Y. Sept. 10, 2008) (finding no basis to conclude that the similar regulation and form delineating the procedure to appeal the decision of the superintendent to Central Office Review Committee was unreasonably confusing or opaque).  Plaintiff only points to the Second Circuit's decision in Williams v. Priatno, 829 F.3d 118 (2d Cir. 2016), for the proposition that that DOCCS's regulations do not clearly outline the process to appeal grievances that the IGRC did not respond to.  (Statement of Facts at ECF pg. 5.)  Although the Second Circuit did indeed hold in that case that DOCCS's regulations did not clearly describe the process and deadlines to file an appeal of a grievance to which the IGRC had never responded because, due to the actions of the prison staff, it was never initially filed, no such unique circumstances are present here that would have rendered the regulations misleading and administrative remedies thus constructively unavailable.  Cf. id. at 124-26 (finding that, in the unique circumstance of that case, the regulations did not "adequately outline the process to appeal" when "the correction officer never [initially] filed [plaintiff's] grievance").  Here, Plaintiff received the decision from the IGRC and, as previously discussed, the steps to appeal were clearly outlined both on Form #2131 and in NYCRR tit. 7, § 701.5(c)(1), including instructions as to what to mark on the form and when and to whom to return it.[4]  Accordingly Plaintiff has not properly exhausted his administrative remedies and his Section 1983 action must be dismissed.[5]

---

[4] Plaintiff cites several other cases without discussion in the table of authorities in his moving papers.  (Docket Entry No. 75-1, ECF pg. 7.)  These cases are similarly inapposite.

[5] Although Plaintiff was released during the pendency of this action, his case is still subject to dismissal for failure to comply with the PLRA's exhaustion requirements because he

To the extent Plaintiff's Amended Complaint can be construed to assert claims under state law, such as for negligence or medical malpractice, the Court declines to exercise supplemental jurisdiction of the state law claims.  28 U.S.C. § 1367(c); See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 130 (2d Cir. 2003) ("In most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage.").  Accordingly, Plaintiff's federal claim is dismissed with prejudice and any state law claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted in its entirety.  Plaintiff's federal claim is dismissed on the merits and the Court declines to exercise jurisdiction of any state law claims.  The Clerk of Court is directed to enter judgment and close this case.

---

was imprisoned when he filed his complaint.  Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2003) (holding that a plaintiff must exhaust all available administrative remedies if he is in custody at the time his complaint is filed).  Furthermore, Plaintiff was still in DOCCS custody at the time both motions for summary judgment were filed.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

This Memorandum Opinion and Order resolves Docket Entry Nos. 63 and 78.

SO ORDERED.

Dated: New York, New York
September 10, 2018

   /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

Copy mailed to:
Leonard Jackins
3534 Ely Ave.
Bronx, NY 10466